FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 18, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALBERTO C.V.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　Defendant. | No. 1:19-CV-03208-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 10, and Defendant's Cross-Motion for Summary Judgment, ECF No. 11. The motions were heard without oral argument. Plaintiff is represented by Nicholas Jordan, and Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney L. Jamala Edwards.

For the reasons set forth below, the Court grants Plaintiff's motion, denies Defendant's motion, reverses the administrative law judge ("ALJ) decision denying disability benefits, and remands the case for the immediate calculation and award of benefits.

**Jurisdiction**

On October 28, 2015, Plaintiff filed a Title II application for disability insurance benefits. Plaintiff alleges an onset date of February 24, 2014.

Plaintiff's application was denied initially and on reconsideration. On October 23, 2017, Plaintiff appeared and testified at a hearing held in Yakima,

Washington before an ALJ. Kim Mullinax also participated as a vocational expert. Plaintiff was represented by Nicholas D. Jordan.

The ALJ issued a decision on May 22, 2018, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on July 24, 2019. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on September 9, 2019. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 2**

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1509. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 3**

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here. At the time of the hearing, Defendant was 43 years old. He attended school through the 8th grade in Mexico. He cannot read or speak English.

In 2011, Plaintiff fell off a ladder while picking pears and injured his left side. He injured his left neck, shoulder, hip and knee. He had abrasions, swelling

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 4**

and lacerations on his left side because the ladder fell on top of him. He had x-rays of his left knee, but no MRI. Washington State Department of Labor & Industries closed the claim in 2011. He continued to work, although his left knee still bothered him. He then injured his right knee at work in late April 2013. He was pushing a cart loaded with products. The wheel of the cart got caught on something, causing his knee to collide with the cart. An x-ray of his knee was done, but there was no detectable abnormality. He was sent to physical therapy. By June 2013, his knee was getting worse rather than improving and an MRI was conducted. He was diagnosed with right knee impact injury, resulting in microfracture and extensive bone swelling and fluid collections. He was placed on work restrictions, with occasional standing and walking for only 1 to 3 hours a day. Plaintiff's pain escalated with his return to work, so he was given a brace and was kept off from work. He continued to complain of popping and pain in his right knee.

In August 2013, he was released to sedentary work for one month. Plaintiff continued to participate in physical therapy. By October 2013, Plaintiff was walking without the use of crutches or any other device and the swelling was much reduced. His active range of motion as normal, although Plaintiff was still complaining of pain in his right knee.

In November 2013, Plaintiff saw Dr. Seltzer. AR 616. He had a limping gait, could not stand on his heels or toes and was not asked to perform a squat because it was too painful for him. Dr. Selzer reviewed the MRI and did not find any evidence of ligament detachments but thought there may be possible edema in the marrow and possible bone bruise. There were no obvious signs of detachment or chondral surfaces or loose bodies within the joint. He noticed mild effusion and swelling. He recommended a follow-up MRI of the right knee.

An MRI scan was conducted in December 2013, which was compared to the one done in June 2013. AR 614. It showed a full-thickness cartilage defect

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 5**

along the medial femoral condyle at the site of bone marrow edema and a subchondral sclerosis and cartilage irregularity, with prominent bone marrow edema. Dr. Selzer concluded Plaintiff's condition had worsened and he was referred to an orthopedic doctor.

Dr. Greenwald performed a right knee arthroscopy, arthroscopic removal of loose bodies, arthroscopic synovectomy, arthroscopic microfracture and chondroplasty of medial femoral condyle, and open arthrotomy with cartilage allograft on February 24, 2014. Dr. Greenwald continued to see Plaintiff for follow-up care. In June 2014, he noted that Plaintiff had no improvement from the surgery on his right knee. AR 304. In September 2014, Plaintiff received three Synvisc injections in his right knee because he was still in pain. He was walking uncomfortably and very stiffly with assistance from a cane. AR 307. In October 2014, Plaintiff reported his knee pain had improved, but he continued to have episodes of intermittent swelling if he stood too long. AR 313. Dr. Greenwald indicated that he did not believe Plaintiff would be able to return to his job as his knee endurance was limited. AR 313.

In September 2014, Dr. Hopp, an orthopedist, examined Plaintiff because Plaintiff was complaining of pain in his left knee. He opined that, on a more probable than not basis, Plaintiff's left knee was injured when he fell in 2011 and that it had been aggravated by forced overuse following his right knee problems. AR 640. He recommended reopening Plaintiff's L & I claim for the ladder injury.

Plaintiff was evaluated by Dr. Schmick and Dr. Fossier in December 2014. AR 324. Plaintiff completed a symptom diagram and made markings over the anterior and posterior surfaces of both knees. He explained that the marks indicate sharp pain when he walks, and that sometimes even at rest, he will experience throbbing pain in his knees. AR 325. Dr. Schmick and Fossier diagnosed a right knee sprain, right knee chondromalacia, right knee tendinitis, and right knee posttraumatic arthritis. Dr. Schmick and Dr. Fossier were asked if Plaintiff's left

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 6**

knee pain or strain was causally related to the April 30, 2013 injury. They indicated they did not believe that the alleged overuse of the left knee was caused by the right knee injury. They noted that Plaintiff's right knee evidenced a 19% lower extremity impairment. They indicated that Plaintiff could sit for six hours and stand and work for two hours at one time. AR 645.

In January 2015, ARNP Clark released Plaintiff to two jobs, with modifications that he must have sitting breaks every two hours, and as needed when standing or walking, on a permanent basis.

Dr. Greenwald saw Plaintiff in April 2015 for his right knee. AR 315. At that time Plaintiff rated the pain severity as an 8 out of 10. Plaintiff reported that his pain was aggravated by climbing and descending stairs, movement, sitting, walking, and standing. He experienced decreased mobility, difficulty initiating sleep, joint tenderness, limping, nocturnal pain, numbness and swelling. He explained that the pain radiates on the back of his leg, he has back pain, and numbness in the entire front of his right leg. He was limping when he walked. He reported the right leg pains had been getting worse in the last year. Dr. Greenwald diagnosed arthritis knee, posttraumatic. He assessed Plaintiff's symptoms to be due to a thoracic or lumbosacral neuritis. He believed that Plaintiff's residual knee pain and swelling were going to persist. He noted Plaintiff had numbness involving the left knee on the front of his leg, with sciatic irritation on the right, causing limping.

Another MRI was done in June 2015. AR 479. Irregularity in the articular cartilage of the medial femoral condyle was seen. There was still some minimal underlying edema in the medial femoral condyle. Plaintiff reported pain in both knees.

An MRI scan of Plaintiff's left knee was done in September 2015. It was reported to be negative. His treatment provider stated that Plaintiff was unable to return to his job due to his injury.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 7**

On September 21, 2015, Dr. Seltzer wrote to the Board of Industrial Insurance Appeals stating that he could find no objective evidence that Plaintiff had sustained an injury and aggravation to his left knee. AR 479.

Plaintiff saw Dr. Lindstrom in November 2015. He complained of pain in both knees. He reported that his left great toe goes numb. On November 10, 2015, an ARNP from Yakima Worker Care stated that Plaintiff was at maximum medical improvement and it was okay to close the claim related to Plaintiff's right knee. He was seen in January 2016. He stated he continued to have pain and difficulty walking with his right knee. He limped, favoring his right knee.

Plaintiff's original claim as a result of falling off the ladder in 2011 was reopened after he was diagnosed with internal derangement of his left knee and a labral tear in his left hip.

In March 2016, a medical evaluation was conducted by Dr. Thomas Gritza, Orthopedist. AR 469. At that time, Plaintiff complained of bilateral anterior knee pain and numbness on the left side. He described the pain as burning, stabbing and aching. He reported that with regard to his right knee, when he gets up in the morning, he notices some crepitus or popping in his right knee. As the day goes on, his right knee pain worsens, and the right knee swells. He uses a cane and limps because his right knee hurts. He also indicated that when he does a lot of walking, it seems like his right knee locks up.

With regard to the left knee, Plaintiff indicated that his pain is primarily on the lateral side of the left femoral condyle, and also his left patellar tendon. He states his left knee swells a little. While he has pain, he does not limp on the left side. He reported that he has difficulty climbing and descending stairs.

Upon examination, both his right and left knees appeared slightly swollen and he stood with both knees slightly flexed. He walked with an asymmetric gain, limping on the right. He was unable to walk on his tiptoes due to pain and declined to walk on his heels, explaining that to do so caused a needle-like

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 8**

sensation on the right side. He could not perform a deep knee bend or squat and would not jog in place. He could not perform a simulated cutting maneuver.

His range of motion of the right knee was 0 degrees to 130 degrees of flexion. Range of motion of the left knee was 0 degrees to 110 degrees, which is marginally normal, given that 110 degrees is the cutoff for knee impairment. When the anterior and posterior drawer signs were done, an audible or palpable click or pop emitted from his right knee. He stated that this audible crepitus was followed by significant pain. He reported that it felt like something was moving inside. Anterior and posterior drawer signs were negative in the left knee. Dr. Gritza recommended that Plaintiff be seen by Dr. Greenwarld for a "second look" arthroscopic procedures because the cartilage matrix implant may be loose or may have a loose flap or mobile component that is causing the clicking and popping. He noted that at the time the procedure was completed it was considered "cutting edge" but it has now essentially vanished from the orthopedic surgical armamentarium as an unsuccessful procedure. In his Addendum, Dr. Gritzka noted that standing x-rays of Plaintiff's right knee show slight narrowing of the medial compartment of the right knee, which is consistent with a partial failure of the cartilage restoration procedure. AR 509.

Dr. Gritzk tested Plaintiff's left hip, which caused lower back and posterior hip area pain and produced pain on the lateral aspect of Plaintiff's left knee. Dr. Gritzka concluded that Plaintiff had left femoracetabular impingement syndrome, or an internal derangement of the left knee and possibly left hip.

In April 2016, a lumbar MRI scan was completed. It demonstrated a bulging disk at L4-L5 combining with facet arthrosis. It also showed a 1.1 cm ovoid mass in the L4 vertebral body of indeterminate nature.

Dr. Greenwald saw Plaintiff in June 2016. At that time, Plaintiff had numbness on both sides of his knee, bilateral tenderness, and pain. Dr. Greenwald

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 9**

indicated that his hip joint exam was completely benign and he recommended conservative care for his back.

In July 2016 Dr. Gritzka updated to his evaluation. AR663. He continued to believe that Plaintiff could not perform his job as a gel coater/painter due to the internal derangements of both his knees and his left hip and back pain.

Plaintiff continued to have left hip pain and pain in his back and saw Dr. Hansen in December 2016. AR 678. He continued to walk with a limp and have difficulty going up and down stairs and hills. He reported that pain medicine did not help much, and sometimes not at all.

In February 2017, Dr. Lynch examined Plaintiff and diagnosed a possible labral tear and suggested hip arthroscopy. AR 682. Plaintiff had surgery on his left hip in May 2017 including a diagnostic arthroscopy, debridement of the labral tear and a limited arthroscopic synovectomy of the left hip. Dr. Lynch concluded that both the lumbar and left hip abnormalities were consistent with a fall onto the left side and either could cause the referred pain to the left knee. Plaintiff began physical therapy in June 2017.

Plaintiff went to the emergency room in July 2017 complaining of chronic right knee pain. He stated that it felt like something was moving around inside the joint. He had full range of motion, and no appreciable swelling. He was advised that his symptoms may be related to physical therapy and increased use of the knee. He also had x-rays of his right knee and they Images of his right knee revealed no identifiable acute osseous injury or significant arthritic changes.

Notably, Plaintiff was seen at the Yakima Worker Care PLLC monthly from September 2014 to August 2017. He consistently stated that he had pain and difficulty walking with his right knee. He also complained of back pain and left knee pain. He limped, favoring his right knee. He consistently had reduced range of motion and swelling. AR 402-426, 445-462, 699-746, 705-746. Plaintiff's treatment providers consistently recognized employment restrictions that

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~** 10

prevented Plaintiff from returning to full employment. Plaintiff has not returned to work full time since his injury in 2013.

His last Activity Prescription Form in the record was completed in August 2017. AR 746. Plaintiff was not released to work at that time. He had significant restrictions, including seldom (0-1 hours) stand/walk, climb stairs, bend/stoop, and squat/kneel. He was never to perform work from ladder, climb a ladder or crawl.

### The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019. AR 17.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 24, 2014. AR 18.

At step two, the ALJ found Plaintiff has the following severe impairments: right knee posttraumatic arthritis with chrondromalacia; tendinitis status-post surgery; obesity; lumbar spine facet arthorosis; left hip mild synovitis; and labral tear status-post surgery. AR 18.

At step three, the ALJ found Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. AR 21.

The ALJ concluded Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that Plaintiff can stand or walk for 4 hours out of 8 hours; sit for 6 hours out of 8 hours; occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds, frequently balance and stoop; occasionally kneel, crouch, and crawl; and he must avoid concentrated exposure to extreme cold, wetness, vibration, and hazards, such as moving machinery and unprotected heights. AR 22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 29.

At step five, the ALJ found Plaintiff was not disabled on the basis that he

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 11**

could perform other work which exists in significant numbers in the national economy, including positions such as assembler, production; cashier II, and storage facility rental clerk. AR 32.

## Issues for Review

1. Whether the ALJ properly assessed Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms?
2. Whether the ALJ properly assessed the opinions of Plaintiff's treating and examining doctors?
3. Whether the ALJ properly determined Plaintiff's residual functional capacity?

## Discussion

1. *Whether the ALJ properly assessed Plaintiff's concerning the intensity, persistence and limiting effects of his symptoms?*

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Specifically, the ALJ noted that Plaintiff's treatment notes in the record do not sustain Plaintiff's allegations of disabling pain and limitation. The ALJ concluded that while Plaintiff experiences some level of pain and limitations, it is only to the extent described in the residual functional capacity (RFC).

Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for rejecting his symptom testimony. Plaintiff argues that it is not enough for the ALJ to opine that his medical records do not support the level of limitation arising from his impairments. He maintains his stated daily activities and treatment history corroborate his testimony regarding the intensity of his symptoms. For example, he testified that he is unable to attend church because he

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 12**

cannot sit stationary for very long without needing to stretch through the service. He needs to lay down to ease the pain in his hip and lift his leg up while sitting to relieve the pain in his right knee.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2017 WL 5180304. At Step 1, the ALJ determines whether the claimant has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms. *Id.* At Step 2, the ALJ evaluates the intensity and persistence of an individual's symptoms such as pain and determines the extent to which an individual's symptoms limit his or her ability to perform work-related activities. *Id.* In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence, the claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and other information provided by medical sources and other persons and any other relevant evidence in the claimant's case record. *Id.*

If the claimant meets the first step and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear, and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 13**

Factors to be considered in evaluation the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR16-3p, 2017 WL 5180304; 20 C.F.R. §§ 404.1529(c)(3).

Daily activities may be grounds for an adverse credibility finding if (1) Plaintiff's activities contradict his other testimony, or (2) Plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 635, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))

The ALJ discounted Plaintiff's statements as not being entirely consistent with the medical evidence and other evidence in the record and also stated the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that Plaintiff has alleged. In making those conclusions, however, the ALJ simply reviewed the evidence in the record but never identified any inconsistencies or how the evidence cannot be reconciled with Plaintiff's pain level. If the ALJ had delved deeper into the medical record, the ALJ would have noted a failed medical procedure. Dr. Greenwald attempted to regrow cartilage in Plaintiff's knee, a procedure that Dr. Gritzka indicated was now no longer used. Dr. Gritzka recommended that additional surgery may be needed to correct

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 14**

Plaintiff's right knee, but this was never done. Notably, the ALJ fails to mention or address this failed medical procedure and fails to address whether this failed medical procedure can account for Plaintiff's debilitating pain.

No medical provider ever indicated that Plaintiff was not suffering pain in his right knee. Rather, the record is fairly consistent that when Plaintiff went to his monthly appointments at the Workers Care, he had pain, swelling, limited range of motion, and he walked with a limp. The ALJ must do more than state that Plaintiff's symptoms are not "entirely consistent" with the medical evidence and other evidence in the record. SSR 16-3P instructs that "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent…. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304. Here, the ALJ did not identify which symptoms are not supported by the record. Plaintiff has right knee pain and limited range of motion, left knee pain and limited range of motion, left hip pain/injury and back pain. Simply identifying and summarizing the medical records, as the ALJ did in this case, does not provide the necessary specific clear and convincing reasons for discounting Plaintiff's symptoms.

Defendant's arguments that the ALJ properly found Plaintiff's subjective allegations of total disability not persuasive is not supported by the ALJ's decision. Defendant asserts the ALJ found Plaintiff's allegations were inconsistent with the evidence showing that with treatment he had overall improvement in both physical and mental functioning, citing to AR 23. But nowhere in the ALJ's decision is such a statement is made. AR 23 indicates that the ALJ considered that

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 15**

in June 2013, Plaintiff cancelled further physical therapy for his right knee as it was getting worse rather than improving, suggesting that somehow this showed Plaintiff was not being credible. But Plaintiff was right. His knee was getting worse and he ultimately had unsuccessful surgery in February 2014. This is not a valid reason to find Plaintiff's allegations inconsistent with the evidence.

Defendant also argues the ALJ found the objective evidence could not be fulling reconciled with the level of pain and limiting effects of the impairments. Again, the ALJ did not do this. The ALJ did not identify the objective evidence that was irreconcilable with Plaintiff's symptoms, other than to simply provide a summary of the medical evidence. The ALJ failed to mention that the latest Activity Prescription Form from August 2017 indicated that Plaintiff was unable to work and the record is clear that he has been unable to work since he hurt his knee in 2013. The ALJ's conclusion that treatment notes in the record do not sustain Plaintiff's allegations of disabling pain and limitations is not supported by substantial evidence.

*2. Whether the ALJ properly evaluated the medical opinion evidence*

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

"If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight," the ALJ should consider the length of the treatment relationship and the frequency of examination by the treating physician; the nature and extent of the treatment relationship between the patient and the treating physician; supportability; consistency with the record, and specialization of the physician. 20 C.F.R. § 404.1527(c)(2)-(6); *Orn*, 495 F.3d at 631.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ need not accept the opinion of any physician, including treating physicians, if that opinion is brief, conclusory and inadequately supported by clinical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight ... even if it does not meet the test for controlling weight." *Orn,* 495 F.3d at 633. An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). It may reject a treating physician's opinion if it is inconsistent with the medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 17**

another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Here, the ALJ gave Dr. Seltzer's assessment of Plaintiff's left knee great weight. Dr Seltzer opined there was no evidence of any pathological condition in the Plaintiff's left knee. This is in err because later imaging and other medical sources concluded that Plaintiff's left knee pain was because of Plaintiff's hip injury that occurred in 2011 when he fell off the ladder. There was a medical reason for the pain in Plaintiff's left knee and to give Dr. Seltzer's assessment great weight was arbitrary and in error.

The ALJ gave little weight to Dr. Smick and Dr. Fossier because they provided no work-related functional limitations to accompany their examination findings. This was in err. They diagnosed Plaintiff with a right knee sprain, right knee chondromalacia, right knee tendinitis, and right knee posttraumatic arthritis. Dr. Smick and Dr. Fossier corroborated Plaintiff's symptoms of pain and their opinions and findings should have been considered by the ALJ.

The ALJ erred in failing to assign anything more than little weight to any other treatment providers, even those addressing relevant issues, and erred in failing to include a weight analysis for several of Plaintiff's treating providers. The ALJ erred in failing to attribute weight to the treatment providers who treated Plaintiff for several years at Yakima Worker Care, including Erin See, ARNP, Jeanette Clark, ARNP, and Duane Frazier, PA-C. Notably, these medical sources offered opinions regarding functional limitations greater than the ALJ's RFC. The ALJ failed to assign weight to Dr. Pezzella, who treated Plaintiff. The ALJ erred in giving little weight to Dr. Gritzka. His opinion was not inconsistent with the record, as the ALJ stated. Rather, his opinions were formed by a physical evaluation of Plaintiff, then corroborated by a medical records review and imaging

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 18**

studies. The ALJ's evaluation of the medical sources is not supported by substantial evidence. Moreover, the ALJ failed to provide either clear and convincing or specific and legitimate reasons for discrediting several of Plaintiff's treating physician's opinions.

3. *Whether the ALJ properly determined Plaintiff's residual functional capacity?*

Because the ALJ failed to properly consider the medical opinion evidence and symptom testimony, the ALJ's RFC assessment does not account for the full extent of Plaintiff's functional limitations. Thus, the RFC assessment cannot support the ALJ's disability determination. In assessing Plaintiff's RFC, the ALJ failed to account for the full extent of his ability to maintain productive, pace, additional breaks, and absenteeism standards. It follows, then, that the ALJ's RFC assessment, and the vocational testimony that relied upon it, cannot support the ALJ's conclusion that Plaintiff can perform jobs in the national economy.

If the opinions of the Yakima Worker Care medical providers were given proper weight, the ALJ would find that Plaintiff is capable of only sedentary work and would find that he would be off task (need to take breaks) and absent more than is customarily tolerated in unskilled employment.

## Conclusion

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence. The ALJ erred in discounting Plaintiff's allegations that pain, swelling, and limited range of motion in his knees and hip limit his ability to complete full time work. The ALJ erred in not giving adequate weight to Plaintiff's treatment provider. Here, if the improperly rejected opinions of Plaintiff's treatment providers are given proper weight, it is clear the record supports a finding that Plaintiff is incapable of working on a regular and continuance basis and thus is disabled. *See Beneck v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (instructing that district courts should

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 19

credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.)

The Court finds that a remand in this case would serve no useful purpose and would only delay an award. *Varney v. Sec. Health & Hum. Servs.*, 859 F.2d 1396, 1138 (9th Cir. 1988).

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED.**

2. Defendant's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

3. The decision of the Commissioner denying benefits is reversed and this case is remanded for the immediate calculation and award of benefits.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 17th day of June 2020.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 20**